UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDUARDO POZO,

    Plaintiff,

v.                                                          CASE NO.: 8:15-cv-929-T-AEP

STELLAR RECOVERY COLLECTION
AGENCY, INC.,

    Defendant.

_____/

## **ORDER**

This cause comes before the Court upon Defendant Stellar Recovery Collection Agency, Inc.'s ("Stellar") Motion for Summary Judgment (Dkt. No. 41) ("Motion"). Plaintiff Eduardo Pozo filed a Response (Dkt. No. 44), and Stellar filed a Reply (Dkt. No. 54).[1]

By this Motion, Defendant moves for summary judgment on Plaintiff's claims that Defendant violated the Telephone Consumer Protection Act ("TCPA") (Count I) and the Fair Debt Collection Practices Act ("FDCPA") (Count II). Stellar argues that (A) it is not liable under the TCPA for calling Plaintiff with an automatic telephone dialing system ("autodialer"), and (B) it is not liable under the FDCPA for engaging in abusive telephonic debt collection. Upon consideration of the evidence submitted by both parties, this Court finds that Defendant did not call Plaintiff with an autodialer and thus Defendant is not liable under the TCPA. However, the Court finds that there is a genuine dispute of material fact as to whether Defendant made harassing

---

[1] Defendant has also filed several notices of supplemental authority in support of its Motion. (*See* Dkt. Nos. 47; 60.) Plaintiff also filed a Declaration of Lisa Wilcox in support of its Response. (Dkt. No. 45.)

telephone calls under the FDCPA. Accordingly, Defendant's Motion is granted in part and denied in part.

## I.  BACKGROUND

This case stems from Stellar's efforts to collect a debt owed to Dish Network from a third party. Dkt. No. 41, Ex. 1 p. 1. Stellar performed several cell phone scrubs and believed this debtor could be reached at a certain telephone number ending in 7105 (the "7105 Number"). *Id.* When Defendant called the 7105 Number, however, Plaintiff Eduardo Pozo began receiving the calls meant for the debtor. There is a dispute as to how many calls Pozo received. At least one document Plaintiff submitted from Stellar shows 16 calls from February 21, 2015, to April 15, 2015. Dkt. No. 45, Ex. 3 p. 9. The call log submitted with Defendant's Motion shows 46 calls during that same time period. Dkt. No. 41, Ex. 1. Plaintiff states in his affidavit that he received over 40 calls. Dkt. No. 45, Ex. 3 ¶ 5.

There is also a dispute as to the content of the calls. Defendant's Motion states that Stellar only made 17 calls, all of which were unanswered. Dkt. No. 41 p. 20. As noted above, however, the attached call log lists 46 calls, and Plaintiff's affidavit states that Stellar called at least 40 times. Dkt. No. 41, Ex. 1; Dkt. No. 45, Ex. 3 ¶ 5. Plaintiff asserted in his affidavit that he spoke to Stellar on six different occasions informing Stellar that he was not the debtor and instructing Stellar to stop calling. Dkt. No. 45, Ex. 3 ¶ 6. The call record attached to his affidavit shows 6 inbound calls to Stellar. Dkt. No. 45, Ex. 3 p. 9. Plaintiff also states that Stellar left him prerecorded messages. Dkt. No. 45, Ex. 3 ¶ 5. He cites the deposition of Kendra Stokes, Stellar's dialer manager, for this proposition, but the deposition itself makes clear that Stellar could not have left such messages using the dialing system at issue here. *See* Dkt. No. 45, Ex. 2 21:25 – 22:1-5. Stellar does not possess any call recordings of any calls to Pozo. *See id.*, 21:18-25.

Pozo sent Defendant a letter dated March 3, 2015, informing Defendant that he did not owe any debt and instructing Defendant to cease calling. Dkt. No. 41, Ex. 3. On April 15, 2015, Stellar received a cease and desist letter from Pozo's attorney; Stellar then ceased calling. Dkt. No. 41, Ex. 1 p. 5.

When calling Plaintiff, Defendant used a web-based dialing program called LiveVox Human Call Initiator ("HCI") to assist its representatives in making the calls. Neither party disputes that Defendant called the 7105 Number using HCI. *See* Dkt. No. 44 p. 6 ("During the relevant time period, Defendant utilized the Livevox telephone system to place all of the telephone calls to Plaintiff's cell phone."); Dkt. No. 45, Ex. 2 9:7-20 (Kendra Stokes testifying that Stellar made all calls to the 7105 Number using HCI).

Laurence H. Seigel, the Executive Vice President of Product Development for Livevox, Inc., explained how the HCI system works. Dkt. No. 41, Ex. 2. LiveVox provides multiple types of calling systems to its customers, including Stellar. *Id.* at ¶ 3. Customers access LiveVox systems through an online portal, and customers do not install any LiveVox hardware or software on their computers. *Id.* LiveVox provides systems capable of automatic dialing and systems limited to human-initiated calls, which require agents to manually dial calls. *Id.* at ¶ 4. The HCI system Stellar used here is one of the human-initiated systems offered by LiveVox. *Id.*

Each call initiated from HCI must be initiated by a human "clicker agent." *Id.* at ¶ 7. To make a call, the clicker agent must confirm in a dialogue box that a call should be launched to a particular telephone number. *Id.* HCI will not initiate the call unless the clicker agent confirms that the call should be made by clicking the dialogue box. *Id.* If a call is answered, the clicker agent refers the call to a "closer agent" who speaks with the debtor. *Id.* at ¶ 8. The clicker agent is able to view a "real time dashboard" which enables the clicker agent to view whether any closer

agents are available, the number of calls in progress, and other call information. *Id.* In order for a call to be launched in HCI, there must be a closer agent available to take the call. *Id.* The clicker agent is able to control when to make calls based on the information viewable in the dashboard. *Id.*

HCI is separate from other dialing systems offered by LiveVox. HCI uses its own unique software and hardware. *Id.* at ¶ 5. In addition, HCI is stored on a separate server from other LiveVox systems. *Id.* at ¶ 6. HCI does not use any statistical algorithm to minimize agent wait time between calls, nor does it incorporate any random or sequential number generator. *Id.* at ¶¶ 10; 13. Further, HCI does not possess any features that may be activated to enable automated calling. *Id.* at ¶ 12.

## II.　STANDARD OF REVIEW

Summary judgment is appropriate where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original). The substantive law applicable to the claims will identify which facts are material. *Id.* at 248. In reviewing the motion, the court must view the evidence and make all factual inferences in a light most favorable to the nonmoving party and resolve all reasonable doubts about the facts in favor of the non-movant. *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 483 F.3d 1265, 1268 (11th Cir. 2007) (citation omitted).

**III.   DISCUSSION**

As noted above, this dispute centers on Defendant's alleged violations of the TCPA and FDCPA.  Broadly speaking, the TCPA imposes liability on defendants who use autodialers or prerecorded voices to make calls without the consent of the recipient.  The FDCPA prohibits a host of unfair and harassing debt collection practices.  Accordingly, the two issues presented to this Court are as follows: (A) did Stellar violate the TCPA by using HCI to call Pozo without his consent, and (B) in making telephone calls to Pozo, did Stellar engage in harassing conduct in violation of the FDCPA.

**A. Count I – The HCI system Stellar used to call Pozo is not an autodialer, and, as such, Stellar did not violate the TCPA.**

The TCPA provides that it shall be unlawful "to make any call . . . using any automatic telephone dialing system or artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  Neither party disputes that Defendant made phone calls to the 7105 Number, that the 7105 Number was a cell phone number, and that Pozo did not give consent to Defendant to call him.

Plaintiff states in his affidavit that he received prerecorded voice messages from Stellar. Dkt. No. 45, Ex. 3 ¶ 5.  He cites the deposition of Kendra Stokes as evidence that Stellar left prerecorded messages. *See* Dkt. No. 45, Ex. 2 21:25 – 22:1-5.  However, this claim is unsupported because the deposition is clear that HCI does not have any ability to leave prerecorded messages. *See id.*  Thus, Plaintiff's TCPA claim turns solely on whether Defendant called Plaintiff with an autodialer – the HCI system.

The TCPA provides that an "automatic telephone dialing system" is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."  47 U.S.C. § 227(a)(1).  As the Federal

Communications Commission ("FCC") and federal courts have interpreted the term, autodialers include devices which automatically call numbers from a pre-programmed list, and "predictive dialers," which automatically call numbers from a list and automatically connect the calls with an available agent. *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1222-23 (S.D. Fla. 2014); *Legg v. Voice Media Group, Inc.*, 20 F. Supp. 3d 1370, 1375 (S.D. Fla. 2014). Ultimately, "the key feature of an ATDS is the capacity to dial numbers without human intervention." *Wilcox v. Green Tree Servicing, LLC*, No. 8:14-CV-1681-T-24 TGW, 2015 WL 2092671, at *5 (M.D. Fla. May 5, 2015). Dialing systems which require an agent to manually initiate calls do not qualify as autodialers under the TCPA. *See Carlisle v. Green Tree Servicing, LLC*, 1:15-CV-2332-TWT, 2016 WL 4011238, at *1 (N.D. Ga. July 27, 2016) (granting summary judgment in favor of the defendant when the evidence showed that all calls were manually dialed); *Martin v. Allied Interstate, LLC*, 15-61140-CIV, 2016 WL 3619684, at *9 (S.D. Fla. June 17, 2016) (granting summary judgment in favor of defendant when testimony indicated that all calls were manually dialed); *Dennis v. Reg'l Adjustment Bureau, Inc.*, 09-61494-CIV, 2010 WL 3359369, at *3 (S.D. Fla. July 7, 2010) (granting summary judgment in favor of the defendant when call notes indicated that all calls were manually dialed).

Furthermore, dialing systems which require agents to use an electronic "point and click" function to initiate calls are not autodialers because human intervention is required to initiate the calls. *See Jenkins v. Mgage, LLC*, 1:14-CV-2791-WSD, 2016 WL 4263937, at *1, 7 (N.D. Ga. Aug. 12, 2016) (granting summary judgment in favor of defendants and concluding that the platform at issue was not an autodialer when the agent had to log into a system, decide who to text, compose the message, and personally send the message[2]); *Estrella v. Ltd Fin. Services, LP*, 8:14-

---

[2] Text messages qualify as calls under the TCPA. *Legg*, 20 F. Supp. 3d at 1373.

CV-2624-T-27AEP, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015) (granting summary judgment in favor of defendant when "the evidence demonstrates, at most, that the calls were placed manually with the use of human intervention through a 'point and click function.'"); *Gaza v. LTD Fin. Services, L.P.*, 8:14-CV-1012-T-30JSS, 2015 WL 5009741, at *1, 4 (M.D. Fla. Aug. 24, 2015) (granting summary judgment in favor of the defendant when "the agent pulled up the subject account from a database and then used his mouse to manually click on the phone number associated with the account to launch the call"); *Wilcox*, 2015 WL 2092671, at *5 ("If the agent selects the number to be called, then the call would be made as a result of human intervention, and the call would not be made using an [autodialer]."); *Modica v. Green Tree Servicing, LLC*, 2015 WL 1943222, at *3 (N.D. Ill. Apr. 29, 2015) (granting summary judgment in favor of defendant and holding that defendant's system, which required that the operator click to initiate a call, was not an autodialer); *Gragg v. Orange Cab Co., Inc.*, 995 F. Supp. 2d 1189, 1193–94 (W.D. Wash. 2014) (granting summary judgment in favor of the defendant when the system at issue required the agent to physically press "accept" to initiate a text message).

*Strauss v. CBE Group, Inc.*, 15-62026-CIV, 2016 WL 1273913 (S.D. Fla. Mar. 28, 2016) is analogous to the instant matter. The *Strauss* court examined a telephone dialing system which required the representative to "click[] to initiate a call." *Id.* at *4. The system was not capable of making automated calls, did not dial predictively, and did not use a random or sequential number generator. *Id.* The *Strauss* court granted summary judgment in favor of the defendant, noting that "human intervention is essential at the point and time that the number is dialed." *Id.*

The dialing equipment used in this case is almost identical to that used in *Strauss*. As in *Strauss*, Stellar's clicker agents initiate all calls by clicking a dialogue box which appears on-screen. Dkt. No. 41, Ex. 2 ¶ 7. By clicking the dialogue box, the Stellar clicker agent confirms

that he or she wishes to call the number. *Id.* HCI allows the clicker agent to view ongoing call activity and decide, based on that information, when to initiate a call to ensure that a closer agent will be available to take the call. *Id.* at ¶ 8. Most importantly, HCI does not allow any calls to be made without a Stellar agent clicking the dialogue box to initiate the call. *Id.* at ¶ 7.

LiveVox keeps the HCI software and hardware separate from and stored on a different server than all automated dialing systems. *Id.* at ¶¶ 5-6. HCI further does not use any statistical algorithm to minimize agent wait time between calls, nor does it incorporate any random or sequential number generator, nor does HCI possess any features that may be activated to enable automated calling. *Id.* at ¶¶ 10 – 13. As in *Strauss*, because HCI requires intervention from its human clicker agents to make every call, HCI cannot be an autodialer.

Plaintiff cites *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217 (D. Mass. 2014) and *Echevvaria v. Diversified Consultants, Inc.*, 13 CIV. 4980 LAK AJP, 2014 WL 929275 (S.D.N.Y. Feb 28, 2014) for the proposition that LiveVox is an autodialer. Both these cases examine LiveVox systems. However, LiveVox offers multiple types of dialing systems; neither of these cases examines HCI. *See* Dkt. No. 41, Ex. 2 ¶ 4.

In *Davis*, an employee of the defendant uploaded customer numbers into the LiveVox system. 36 F. Supp. 3d at 224. "Essentially, [the agent] instructed LiveVox which numbers to call to the same extent as if [an agent] himself had typed in the number on a telephone keypad." *Id.* Then, after a recipient answered, LiveVox automatically routed the call to a free employee. *Id.*

Similarly, in *Echevvaria*, defendant's employee would log into the LiveVox system, which contained over 3 million numbers. 2014 WL 929275, at *2. The system would then "simultaneously call multiple debtors," applying "a pre-programmed algorithm designed to limit

8

the amount of time between calls." *Id.* Once a debtor answered the phone, the system would notify the calling employee to take the call.

The courts in both *Echevvaria* and *Davis* found the LiveVox systems used in those cases to be autodialers. *See Echevvaria*, 2014 WL 929275, at *7; *Davis*, 36 F. Supp. 3d at 226. The systems in *Echevvaria* and *Davis* were predictive dialers because they automatically called numbers from a list and automatically connected the calls with an available agent. *See Legg*, 20 F. Supp. 3d at 1375. As discussed above, the Stellar HCI system required human intervention to make and route each call, and thus HCI cannot be an autodialer.

Plaintiff also attempts to manufacture a genuine issue of material fact by securing an affidavit from its expert, Gary Parker. Dkt. No. 45, Ex. 1. Parker states that LiveVox systems are autodialers because they have the "capacity" for automatic dialing. *Id.* ¶ 14. In addition, he states that "Defendant's list generation and call placement systems undoubtedly fit the FCC's definition of an 'auto-dialer' and 'predictive-dialer.'" *Id.* ¶ 13.

Parker's vague affidavit does not create a disputed issue of fact. Again, LiveVox offers multiple telephone dialing systems. There is no indication that Parker actually examined the HCI system. Parker's affidavit does not controvert the simple fact that HCI required human intervention to place all calls.

This Court recognizes that in July 2015, the FCC issued new interpretative rules on the TCPA (the "2015 Order"). *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015). The FCC reaffirmed that "autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so." *See id.* at 7974. The FCC further defined "capacity," holding that "an autodialer is not limited to its current configuration but also includes its potential functionalities." *Id.* In

other words, devices which can be *modified* to make calls without human intervention are autodialers under the new rule. *See id.* Thus, systems on which automated dialing can be enabled by installation of new software are autodialers under the 2015 Order. *Id.* at 7975. The FCC declined to meaningfully identify systems which have no potential functionality to make autodialed calls.

Because it is undisputed that Defendant made each call in this case before the release of the 2015 Order, it is unclear whether the 2015 Order applies here. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014) (holding that previously issued guidance was "not dispositive of the present case because the FCC issued its ruling after the calls in question . . . ."); *Schweitzer v. Comenity Bank*, 158 F. Supp. 3d 1312 (S.D. Fla. 2016) ("It is unclear whether the 2015 FCC Ruling applies to this case, as it was issued after . . . all the phone calls subject to this litigation."); *Jenkins*, 2016 WL 4263937, at *6. Neither party has briefed this Court as to the applicability of the 2015 Order.

However, even if the 2015 Order applies, it does not change the result. There is no evidence that Stellar could modify HCI to make autodialed calls. HCI uses its own unique software and hardware different from other LiveVox systems. *Id.* at ¶ 5. HCI is stored on a separate server from other LiveVox systems. *Id.* at ¶ 6. HCI does not possess any features that may be activated to enable automated calling. *Id.* at ¶ 12. Furthermore, Stellar cited multiple cases issued after the 2015 Order illustrating that electronic systems using point and click software are not autodialers. *See Strauss*, 2016 WL 1273913 (recognizing the 2015 Order and concluding that a point and click system was not an autodialer); *Estrella*, 2015 WL 6742062 (same); *Gaza*, 2015 WL 5009741 (same); *Jenkins*, 2016 WL 4263937 (recognizing the 2015 Order and concluding that a system which required that texts be manually sent was not an autodialer). Of course, Stellar could

hypothetically hire a team of programmers to modify and rewrite large portions of HCI's code to enable HCI to make autodialed calls, eliminating clicker agents, the dashboard, and all human input. However, the fact that Stellar *might* be able to undertake such a pointless endeavor does not mean that HCI has the "capacity" to be an autodialer or that it has the "potential functionality" to be an autodialer within the meaning of the TCPA and the 2015 Order.

In sum, because Stellar's HCI system required its representatives to manually dial all calls and was not capable of making any calls without human intervention, Stellar did not employ an autodialer. Because Stellar did not make autodialed calls, Stellar cannot be liable under the TCPA. This Court grants summary judgment in favor of the Defendant on Plaintiff's TCPA claim.

**B. Count II – Because there is a genuine dispute of material fact as to the content and the amount of calls Stellar made to Pozo, summary judgment on Plaintiff's FDCPA claim is not appropriate.**

Under the FDCPA, debt collectors "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. This conduct includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). "In determining liability under FDCPA Section 1692d(5), courts often consider the volume and pattern of calls made to the debtor." *Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1337 (M.D. Fla. 2011); *see also Brandt v. I.C. Sys., Inc.,* No. 8:09–cv–126–T–26MAP, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010) (noting that "[c]ourts have held that [w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.") (internal citation omitted). Intent to harass "may be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called . . . ." *Brandt*, 2010 WL 582051, at

\*2. In addition, "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985).

Pozo's FDCPA claim turns on whether he received harassing phone calls. Stellar argues that it only made 17 calls to Pozo, all unanswered. Dkt. No. 41 p. 20. Stellar cites ample authority for the proposition that in the absence of other evidence showing intent to harass, call volume alone is not enough to sustain an FDCPA claims.

In contrast to Defendant's assertion, it is unclear how many calls Pozo received and whether Pozo spoke to Defendant during the calls. Plaintiff's affidavit states that he spoke to Stellar on six different occasions, informing Stellar that he was not the debtor and instructing Stellar to stop calling. Dkt. No. 45, Ex. 3 ¶ 6. The call log included with his affidavit does show 6 inbound calls to Stellar. Dkt. No. 45, Ex. 3 p. 9. Stellar does not possess any recordings of calls with Pozo which could shed light on the content of the communications. *See* Dkt. No. 45, Ex. 2 21:18-25. In addition, Pozo sent Defendant a letter dated March 3, 2015, informing Defendant that he did not owe any debt and instructing Stellar to cease calling. Dkt. No. 41, Ex. 3. Regarding call volume, Pozo further states that he received at least 40 calls from Stellar. Dkt. No. 45, Ex. 3 ¶ 5. The call log attached to Defendant's Motion lists 46 calls from February 20, 2015, to April 15, 2015. Dkt. No. 41, Ex. 1.

Taking this evidence in the light most favorable to the Plaintiff, a reasonable fact finder could conclude that Stellar made over 40 call to Pozo over a two-month period, even when Pozo told Stellar that he was not the debtor and instructed Stellar to cease calling. Stellar does not possess any call recordings which might rebut this evidence. A reasonable fact finder could thus

infer that Stellar called with the intent to harass Pozo. *See Brandt*, 2010 WL 582051, at *2. Accordingly, this Court will not grant summary judgment on Plaintiff's FDCPA claim.

Thus, it is **ORDERED:**

1) Plaintiffs' Motion for Summary Judgment (Dkt. No. 41) be **GRANTED IN PART AND DENIED IN PART.**

2) Summary judgment is granted as to Plaintiff's Count I.

3) Summary judgment is denied as to Plaintiff's Count II.

**DONE AND ORDERED** in Tampa, Florida this 2nd day of September, 2016.

ANTHONY E. PORCELLI
United States Magistrate Judge

Copies furnished to:
Counsel of Record